## 5637.  ATLANTA FINANCE COMPANY v. SOUTHERN RAILWAY COMPANY.

1. Ordinarily the invalidity of a void contract may be asserted by any person whose interest may be affected by its provisions.
2. Generally one may convey to another authority to perform, at any time in the future, an act in his behalf; but a present conveyance of authority to execute a salary order or to complete an assignment of wages, by filling in certain blanks, when the wages have not been earned at the time that the assignment is signed in blank, is void.  If the assignment as completed purports to convey to the assignee salary which has been earned prior to the purported date of the assignment, prima facie the assignor's debtor would be liable to the assignee of the wages, but payment of the debt for wages evidenced by a purported assignment will not discharge the debtor from liability to the maker of the assignment, if the payment be made with full knowledge of the fact that the assignment is void.

DECIDED FEBRUARY 3, 1915.

Complaint; from municipal court of Atlanta.  March 24, 1914.

*Gober & Jackson,* for plaintiff.

*M. P. McWhorter, E. A. Neely,* for defendant.

RUSSELL, C. J.   The Atlanta Finance Company brought suit against the Southern Railway Company upon a contract whereby one Clark purported to have assigned on June 30, 1913, an account for salary or wages already earned by him during the month of June, and due to him by the Southern Railway Company.  The defendant relied upon the invalidity of the contract of assignment, as its defense, and in its plea asserted that the real contract was in fact an assignment on April 23, 1913, of wages which at that time had not been earned.  It was further alleged by the defendant that the wages sought to be assigned were paid by it to Clark after the company was made aware that the assignment was in fact executed on April 23, 1913, and not on June 30, 1913, as it purported to have been.  A motion to strike the defendant's plea was overruled.  On the trial it appeared, without contradiction, that Clark merely signed the printed form of assignment of wages; all the spaces prepared for insertion of the date, the amount, the name of his employer, and the period for which the wages were due, as well as the consideration of the contract, being left blank.  This paper was signed by him on April 23, 1913, and he executed at the same time another paper, containing the following clause:  "In consideration of notes and money had and received, I hereby give

as security· this paper, giving to the Atlanta ·Finance· Company authority to execute a salary order on any time that I may have at any time to satisfy payment of the same, and to act as my attorney in fact to sign all checks, vouchers, receipts, and acquittances necessary to be signed in order to collect said account." Clark testified that at the time he signed the assignment, the whole of it was blank except the printed matter therein set out, and that he signed both the assignment and the power of attorney set out above. The plaintiff introduced G. H. Rosenbusch, its manager, who admitted that the power of attorney and the assignment were signed in blank as testified to by Clark; that Clark was indebted to the Atlanta Finance Company on certain notes, and the assignment was signed and delivered to the Atlanta Finance Company for the purpose of securing said notes; that the assignment was not to be filled in "unless and until the notes were not paid," and he (Rosenbusch) filled in the assignment when the notes, or one of them, became due and was not paid, giving the Southern Railway Company notice of the assignment. Before the money was paid by the railway company to either the plaintiff or Clark, Rosenbusch told counsel for the defendant that the original blank assignment was signed on April 23, 1913, and that on the same day Clark executed the power of attorney, and that he filled in the blank places in the assignment, over the signature of Clark, on June 30. All the testimony of Rosenbusch was objected to by the plaintiff, as being irrelevant, immaterial, and incompetent; and the same objections were made to all the testimony of Clark, except his reference to the power of attorney and his having signed the assignment. After hearing the evidence, the trial judge in the municipal court rendered judgment in favor of the defendant; the plaintiff's motion for a new trial was denied, and the plaintiff sued out the present writ of error.

The various exceptions in the record really present but two questions; the determination of which controls alike the ruling upon the motion to strike the defendant's answer, the correctness of the rulings upon the evidence, and the merit of the judgment finally rendered. (1) Is the contract which was the basis of this action void, as being in violation of section 3465 of the Civil Code? (2) Is the right to assert that a contract is void a mere personal privilege, conferred upon the maker of the assignment, and the asser-

tion of this privilege confined solely to him, or has the defendant also the right to attack the validity of the contract and to refuse to recognize an assignment which, for reasons of public policy, the General Assembly has outlawed? We will consider these two propositions in inverse order, for the reason that if the right to assert the invalidity of a contract is confined to the maker alone, it is very clear that the judgment in favor of the defendant was wrong, and there would be no necessity for a ruling upon any other feature of the case. As a general rule, any chose in action is assignable in writing; and, so far as appears from the record, the defendant would be liable if the assignment in the present case is valid, as it appears to be; but, on the other hand, even if it be void, the defendant would be none the less liable if the right to assert its invalidity is confined to the maker. For these reasons it is plain to us that the first question to be considered is whether the Southern Railway Company can defend this action upon the ground that Clark's purported assignment of his wages was void.

1. We see no reason why the invalidity of such a contract may not be asserted by any one whose interests are affected by its provisions. Suppose that, from familiarity with the handwriting of Clark, the defendant in the present case had perceived, when the assignment was presented, that what purported to be the signature of Clark was in fact a forgery, or suppose that the contract had borne the date of April 23, 1913, instead of June 30, 1913, would the defendant have been compelled to pay the order for wages, and be precluded from setting up any of the facts stated as defense? Certain it is that one who owes an account to another will not be discharged from liability to his creditor by making payment in pursuance of an assignment which he knows to be a forgery, and that under such circumstances he would not be protected against having to pay the account to the real creditor. It is undisputed in the present case that the Southern Railway Company knew that this assignment was only signed in blank on April 23, 1913, and knew that Rosenbusch subsequently filled in all the material stipulations of the contract. Having notice of all these facts, demand for payment by the assignee imposed upon the debtor the responsibility to pay at its peril. If, under such circumstances, the contract was a valid assignment the debtor should pay. If the de-

fendant paid an invalid account, with knowledge of all the facts, the payment would not protect it from the necessity of subsequently paying the original creditor. In such a contingency, what more proper course is there to take than to ask the direction of the court, as the defendant did by its plea in which it asserted that Clark's attempt to assign a portion of his wages for the purpose of securing his debt was void. Nothing can be more absolute than voidness; and if Clark's assignment was void, for the reasons alleged by the defendant in its plea, there would be nothing to prevent Clark from requiring the railway company to pay the account a second time. The proposition of learned counsel that a plea of the invalidity of the contract is a personal one does not seem to us to be meritorious, and we attach no significance to the fact that Clark gave no testimony indicating that he had repudiated the assignment. If an answer on this point was pertinent, counsel for the plaintiff could have elicited an answer as easily as counsel for the defendant; but the fact that Clark had already collected the money is a significant circumstance indicating repudiation as a matter of fact; and, as a matter of law, a void contract could not be vitalized by Clark's mere assertion that he had not repudiated it, nor deprive Clark of his right of suing to recover his wages if he had not been paid them, nor prevent him from retaining any money which might have been paid him; and it appears that in fact he had been paid in full. The provisions of section 3465 of the Civil Code are based upon considerations of sound public policy, and there are no other reasons why this statute limiting the contractual rights of citizens should have been passed. The legislature saw that debt, extravagance, distress, and penury, each following in the footsteps of the other, were likely to ensue if contracts involving so large an element of chance as the transfer of wages which were unearned and might never be earned were permitted. It is doubtful if an account which had no actual existence, and which necessarily depended upon the eventualities of the future, was ever within the scope of legitimate assignment as provided by sections 3653 and 3655 of the Civil Code. But however this may be, it was within the power of the legislature to declare totally void all contracts purporting to assign wages which had not been earned at the time of the alleged assignment. Generally the consideration received by a transferee of a contract of transfer is a matter of no

concern to the obligor, and yet he can avail himself of the invalidity of the contract whenever it is necessary for the purpose of letting in a meritorious defense of which he could not otherwise avail himself. A contract which is absolutely void upon grounds of public policy is subject to attack by any person whose interests are affected thereby; and since it appears that the employer of the assignor knew that the assignment was signed in April, and that payment to the assignee might not protect him against a subsequent assertion on the part of the assignor of his right to retain the amount already paid him as wages, the employer of the assignor was authorized to interpose the invalidity of the assignment as a defense against the action brought by the assignee to recover wages of the employee, assigned before they had been earned. If they were in fact assigned before they were earned, the contract was void. If the assignment was made after they had been earned, the contract of assignment was authorized by law.

2. We come then to consider whether the undisputed facts show that the contract was one involving unearned wages, or whether it related to wages whose very existence depended upon the developments of the future. In arriving at the intention of the parties the two papers which were contemporaneously executed are to be construed together, and we think that the authority conferred in the power of attorney to execute "a salary order on any time that I may have *at any time*" clearly shows that at the time the assignment was made the parties to the contract were dealing with wages to be earned, instead of wages which had already been earned. It is true that Clark did nothing more than sign the contract of assignment, and that he authorized the Atlanta Finance Company, whenever he had wages due him, to draw an assignment or salary order, as it is called. But the purpose of the law would be wholly defeated if such a power of attorney as this could be construed to authorize a creditor to determine, at his pleasure when he should make demand upon a debtor of his debtor, the amount for which demand should be made, and to select the particular debtor of his debtor whose indebtedness he would transfer to himself; and so it is plain that none of the authorities cited as to contracts not in contravention of public policy (all of which contracts, so far as appears, were perfectly legal) are in point. The signing of a blank assignment of wages, in which the date, the amount, and all other

blanks were left unfilled on April 23, 1913, on which date the person who signed the blank assignment executed also a written authority to the assignee to fill in the blanks left in the printed form of assignment, was a mere device to evade the provisions of section 3465 of the Civil Code; and since the assignment itself, as well as the authority to fill in the blanks, necessarily relates back to the date on which the assignor originally signed these instruments, the contract of assignment must be treated as an attempt to assign or pledge unearned wages, if it appears that, in pursuance of the authority conveyed by the purported assignor, the blanks were filled so as to transfer and assign his wages for the month of June, 1913, or his wages for any month subsequent to the date when he originally signed the instrument in blank. Consequently, the assignment in the present case was void.          *Judgment affirmed.*