UNITED STATES of America

v.

Dexter A. FORBES, Appellant.

No. 74–1872.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 7, 1975.

Decided July 8, 1975.

Thomas W. Kirby,* with whom Sherman L. Cohn and Larry J. Ritchie, Washington, D. C. (both appointed by this court), and Charles R. Shockey,* were on the brief for appellant.

Brian W. Shaughnessy, Asst. U. S. Atty., for appellee. Earl J. Silbert, U. S. Atty., John A. Terry, Stuart M. Gerson and Michael H. Gertner, Asst. U. S. Attys., were on the brief for appellee.

Before MacKINNON and ROBB, Circuit Judges, and CHRISTENSEN; ** Senior District Judge for the District of Utah.

Opinion for the court filed by Circuit Judge MacKINNON.

MacKINNON, Circuit Judge:

Appellant Forbes was adjudged to be guilty of possessing phenmetrazine (Preludin) in violation of section 844(a) of the Controlled Substances Act.[1] He appeals to this court, contending that his possession was legal because the specific drugs that were found in his coat pockets had been obtained by two other persons pursuant to valid prescriptions from a medical practitioner acting in the course of his professional practice. We hold that under the statute the mere introduction of the labels on drugs prescribed for two other people is not prima facie evidence that Forbes' possession was valid. We do not find it necessary to reach appellant's contention that section 844(a) creates a presumption which violates due process requirements because the Government's case did not rely on any statutory presumption. However, we reverse the conviction because of the failure of the court to instruct on the issue of agency as raised by the evidence.

---

* Entered appearances as student counsel pursuant to Rule 20 of the General Rules of this court.

** Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. 84 Stat. 1242, 21 U.S.C. § 801 et seq.

## I

The Controlled Substances Act, enacted by Congress in 1970, generally revised the federal regulation of narcotics and other dangerous drugs. Section 844(a) provides:

> (a) It shall be unlawful for any person knowingly or intentionally to possess a controlled substance *unless such substance was obtained directly, or pursuant to a valid prescription or order, from a practitioner, while acting in the course of his professional practice*, or except as otherwise authorized by this title or title II . . . .[2]

21 U.S.C. § 844(a). (Emphasis added).

Relying principally upon this subsection of the statute, an information was filed charging in a single count that:

> On or about November 7, 1973, within the District of Columbia, DEXTER A. FORBES unlawfully, knowingly and intentionally possessed a controlled substance, that is, a quantity of phenmetrazine.

During a jury trial on this charge, the following facts appeared: On November 7, 1973, Forbes was arrested pursuant to an arrest warrant[3] while he was sitting in the driver's seat of an automobile stopped at the corner of 17th and East Capitol Street, N.E., Washington, D.C. During a search incident to the arrest, the police officer found a transparent plastic vial (Exhibit 2A) containing 23 pink tablets in Forbes' right-hand coat pocket and another similar vial (Exhibit 2B) containing 27 pink tablets in his left-hand coat pocket. The tablets in both vials were identified as Preludin, containing a total of 75 milligrams of phenmetrazine hydrochloride,[4] and the entire contents of both vials were introduced in evidence. Inside each vial was a loose pharmacy label. The label in Exhibit 2A reads as follows:

```
Ayres Pharmacy, Inc. 678-2711 #265272 BNDDAL 2353821
Dr. Burton Denea [5] Latson 10-30-73 [6]
For daily appetite control Preludin 75
1932 Martin Luther King Avenue, S.E., Washington, D. C. 20020
```

The Exhibit 2B label reads as follows:

```
Keep all medication from children
Woodridge Pharmacy
1213-15 Goodhope Road, S.E. Telephone 678-4100
Washington, D. C. BNDD #AW5327285
0050098 Dr. A. Burton
For: Kenny Smith
Take one (1) tablet daily, in the morning, for appetite control
30 October 73
Exp. Date (Preludin-75)
```

---

The Kenny Smith referred to in the prescription label in Exhibit 2B was one of the two passengers in the car with appellant at the time of the arrest.

2. This case does not involve application of any of the exceptions.

3. The warrant charged assault with a dangerous weapon and was unrelated to the instant narcotics offense.

4. The jury was instructed as a matter of law that phenmetrazine is a controlled substance within the meaning of the statute (Tr. 89). Since the drug was in "dosage unit form," it is presumably classified as a Schedule III controlled substance. 39 Fed.Reg. 22142 (1974).

5. Deena is the correct spelling of the name (Tr. 47).

6. In the figures indicating the day in the designation of the date, the figure 3 was struck over a 2. Miss Latson testified that she had obtained the drugs on the 30th. (Tr. 49).

Upon a showing of the above facts, the Government rested its case-in-chief, and defense counsel moved for a judgment of acquittal on the grounds that the Government had not shown unlawful possession. In making this motion, appellant relied upon his construction of section 885(a)(2) which provides:

> In the case of a person charged under section 844(a) of this title with the possession of a controlled substance, any label identifying such substance for purposes of section 353(b)(2) of this title shall be admissible in evidence and *shall be prima facie evidence that such substance was obtained pursuant to a valid prescription from a practitioner while acting in the course of his professional practice.*

21 U.S.C. § 885(a)(2). (Emphasis added).

Forbes construed this provision to require a finding, based on the introduction of the labels, that the tablets had been issued pursuant to a valid prescription of a doctor and that this was a complete defense to the charge against him, even though the drugs had been obtained on prescriptions in the name of other individuals. He argued that the Government did not thereafter meet the resulting burden to introduce evidence tending to prove that he possessed the tablets without authority or consent from the persons to whom they were issued. However, the court interpreted the two statutes [7] as only legalizing possession of the drugs by the particular person to whom the prescription was issued. On the basis of the Government's evidence, it held that the issue of guilt was for the jury and accordingly denied the motion for judgment of acquittal.

The defense then called Deena Latson who testified that Forbes was her boyfriend, that the 23 tablets in the vial containing her name (Exhibit 2A) were hers, that they had been received by her on October 30, 1973, (Tr. 49) pursuant to a prescription issued by Dr. Burton for "a loss of appetite," [8] (Tr. 50) and that on the day of Forbes' arrest, November 7th, she had left the tablets with him as they were making her dizzy. "He [Forbes] said the first chance he would get, he was going to take them back down to the doctor, and I left them in the car." (Tr. 51) Miss Latson further testified that she did not know Kenny Smith.

The defense then rested without calling Kenny Smith as a witness, without offering any evidence to explain appellant's possession of Smith's tablets and without appellant taking the stand. The motion for judgment of acquittal was renewed, based on substantially the same theory of the underlying law as had been advanced at the close of the Government's case plus the Latson explanation. It was again denied on the basis of the Government's evidence, the court pointing out that no explanation had been given of Forbes' possession of the Smith tablets. In so ruling, the court stated, "All [the Government] has to prove is that this man [Forbes] was in possession of these drugs and he does not have a prescription for them. That's [its] case. * * * They were not obtained for him. He has got somebody else's prescription." (Tr. 56)

II

Appellant's first point is that the introduction of the prescription labels established a prima facie defense to the charge of unlawful possession and entitled him to a judgment of acquittal as a matter of law. In support of this contention he asserts that 21 U.S.C. § 844(a) excepts from the proscribed offenses those instances where the "[controlled] substance was obtained . . . pursuant to a valid prescription . . ." even though the person found in possession of the drugs is not the patient identified in the label. To construe the statute as appellant suggests would legalize possession of a quantity of controlled substance by *any* person who subsequently acquires it as long as it was originally validly obtained by prescrip-

---

7. Sections 844(a) and 885(a)(2).

8. *See* n. 16, *infra.*

tion. Such a construction would even make the labels a defense in the case of possession by a thief or possession obtained by fraud. Also, because empty bottles are refillable, once a valid prescription label was obtained, the bottle could be refilled innumerable times with illegal drugs conforming to the description on the label and every subsequent possessor of the label could claim a defense to a charge of unlawful possession of the drugs. Obviously, this construction would create a loophole in the statute of such magnitude as to render its effective enforcement practically impossible. It would be absurd to hold that Congress intended that section 844(a) should be construed so as to produce such a result.

■■ In our view, the key language in the "unless" clause of section 844(a) which establishes the defense[9] to the charge of possession is the phrase "pursuant to a valid prescription." The obvious question is: What must be pursuant to the prescription? Appellant would read the statute as simply requiring that the *original issuance* of the drug be pursuant to the prescription in order to validate all subsequent possession. However, the subject matter of section 844(a) is the lawfulness (or unlawfulness) of the possession, and not the dispensing, of controlled substances. We believe the proper interpretation of the statute to be that possession is unlawful unless *the accused obtained possession of the controlled substance pursuant to a valid prescription.* Thus, in order to establish the defense set out in the "unless" clause, it is not enough for the defendant to show that the original issuance of the drug was pursuant to a valid prescription; he must also show that *his possession* was *pursuant* to the prescription.

■ In the case of the patient whose name appears on the label, these showings will be identical. However, in the case of someone other than the patient named in the label, possession can be *pursuant to the prescription* only if he is acting on behalf of the patient and in the course of carrying out the purpose of the prescription, *i. e.,* if he is acting as the agent of the patient. This latter result flows from the general rule of law that whatever any person is legally capable of doing himself, he can do through another as his agent.[10] Since the patient can lawfully possess drugs issued pursuant to a prescription in his name, it should follow that he can lawfully authorize another to possess the drugs as his agent for purposes consistent with the prescription.[11] It is of course true that Congress did not specifically state that this type of agency relationship is a valid defense to a charge of unlawful possession of a controlled substance, but we are convinced that the necessity for the patient to create such relationships is

---

**9.** It is clear that the "unless" clause establishes a defense to be raised by the accused rather than an element of the offense to be proven by the Government. If this were not the case, there would be no point to section 885(a)(2) which provides that introduction of a label is prima facie evidence that the drugs were lawfully issued, since under such a construction the Government would have to negate that fact even in the absence of the label. Congress obviously did not intend to place on the Government the near impossible burden of proving a negative in order to establish a violation of section 844(a). *See also* Part III, *infra.*

**10.** *See* Rich Printing Co. v. McKellar's Estate, 46 Tenn.App. 444, 330 S.W.2d 361 (1959); Zeeb v. Atlas Powder Co., 32 Del.Ch. 486, 87 A.2d 123 (1952); Petrazelli v. Propper, 409 Ill. 365, 99 N.E.2d 140 (1951); First Nat'l Bank of Alex v. Southland Production Co., 189 Okl. 9, 112 P.2d 1087, 1092 (1941); Link, Petter & Co. v. Pollie, 241 Mich. 356, 217 N.W. 60 (1928); Atlanta Finance Co. v. Southern Ry. Co., 15 Ga.App. 663, 84 S.E. 147 (1915). *See generally* 2A C.J.S. Agency § 25 (1972).

**11.** This latter limitation is of extreme importance as it serves to restrict the scope of the agency to legitimate purposes. Thus the patient could not create a lawful possession in an agent for purposes of consumption of the drugs by the agent, or for resale, since such purposes are not consistent with the prescription. It follows that merely showing consent by the patient to possession by another will not be sufficient to raise the defense in the absence of evidence suggesting that the agency was created for a valid purpose.

sufficiently common that Congress could not have reasonably contemplated that possession by an agent of the patient in the course of carrying out the purpose of the prescription would be unlawful under section 844(a).

Furthermore, other provisions of the Controlled Substances Act suggest that certain agency relationships may be consistent with its purposes. Section 829(b) provides:

> Except when dispensed directly by a practitioner, other than a pharmacist, to an ultimate user,[12] no controlled substance in schedule III . . . may be dispensed without a written or oral prescription in conformity with section 353(b) of this title. . . .

Section 802(10) provides:

> "dispense" means to *deliver* a controlled substance to an ultimate user or research subject by, or pursuant to the lawful order of, a practitioner . . . . (Emphasis added)

Section 802(8) provides:

> "deliver" . . . mean[s] the actual, *constructive*, or attempted transfer of a controlled substance, *whether or not there exists an agency relationship*. (Emphasis added)

While the exact purpose of these definitional sections is somewhat unclear, they do indicate that Congress contemplated the possibility of a constructive transfer to the patient by dispensing to an agent. If delivery to the patient via a duly authorized agent is possible, we see no reason to hold that it would be unlawful for a patient to create the same type of agency relationship subsequent to obtaining actual possession of the drugs, as long as the purpose of the agency is consistent with the purpose of the original prescription.

 Appellant contends that section 885(a)(2) [13] "allows the defendant to create a lawful possession of a controlled

substance pursuant to a valid prescription under section 844(a) merely by introducing the prescription label." Appellant's Brief at 11. However, this latter section does not, by itself, create any defense to a charge of unlawful possession but merely describes the treatment to be accorded a particular item of evidence. In prosecutions under section 844(a), section 885(a)(2) provides that "any label identifying such substance . . . shall be admissible in evidence" and that the label "shall be prima facie evidence that such substance was obtained pursuant to a valid prescription." The first clause is intended to permit the introduction of a label without first laying a foundation for its admission by calling the doctor and the pharmacist to testify to the validity of the label and the underlying prescription. The second clause reverses the normal operation of the hearsay rule in such circumstances and creates a rebuttable evidentiary presumption that the assertions on the face of the label are true; *i. e.*, that the prescription referenced in the label exists, that the drugs were issued in accordance with the directions contained in that prescription, and that they were issued in the manner described in the label. Applying this section to the evidence in the instant case, the introduction of the labels, with the names, dates, descriptions and instructions written thereon, presumptively established that the Preludin tablets contained in each vial *were obtained by Deena Latson and Kenny Smith* on October 30, 1973, pursuant to valid prescriptions issued by a practitioner, Dr. Burton, while acting in the course of his professional practice.

In the absence of some contrary Government evidence, this showing would prove the "unless" clause of section 844(a), and thus establish a defense, in the case of charges against Latson or

---

12. An "ultimate user" is one who possesses a controlled substance "for his own use or for the use of a member of his household or for an animal owned by him or by a member of his household." 21 U.S.C. § 802(25).

13. *See* text 169 U.S.App.D.C. p. ——, 515 F.2d p. 679, *supra.*

Smith. Appellant would have us go further and hold that the labels were also prima facie evidence that *his* possession of the drugs was lawful and therefore their introduction created a prima facie defense to the charges against him. However, this argument misreads the point of section 885(a)(2). As indicated above, that statute is directed to the admission of certain evidence and the inferences to be drawn from that evidence and can be said to create a defense only in the sense that this evidence may amount to a defense under the terms of section 844(a) in appropriate circumstances.

Returning to section 844(a), the question becomes whether the "prima facie" showing made by the introduction of the labels amounts to a defense under the "unless" clause. The drugs in this case came into appellant's possession by a two-step process: (1) the pharmacy to Smith and Latson; and (2) Smith and Latson to appellant. Under section 885(a)(2), the labels are prima facie evidence of the legality of step (1) but in no way establish the validity of step (2). To establish his defense, appellant must convince the jury that both steps were lawful. Since proof that the drugs were validly issued to Latson and Smith is not, by itself, evidence that Forbes was in lawful possession of the drugs, the labels did not raise any sort of "prima facie defense" in this case and a directed verdict was not called for.

### III

On the assumption that the "unless" clause of section 844(a) [14] establishes a defense which the defendant must raise by producing evidence, rather than an element of the offense which the Government must establish in its case-in-

chief, appellant contends that section 844(a) creates a legislative presumption that any possession of a prescription drug which is a controlled substance by someone other than the patient named on the label is unlawful, that such presumption is contrary to fact, and that the statute is therefore unconstitutional. We do not find the statutory scheme to be susceptible to such a challenge. In those instances where the accused wishes to raise a defense based on agency, the evidence relating to the purported agency will be peculiarly in the hands of the "agent." Thus it is reasonable to require that the defense present some evidence tending to show the existence of the agency relationship. [15] The evaluation of this evidence is a function for the jury. Of course, when such a defense is properly raised, the Government retains its ultimate burden of proving its case to the jury beyond a reasonable doubt.

Furthermore, it is not necessary here to extensively discuss appellant's contentions since the Government presented sufficient evidence to prove the offense without relying on any statutory presumption. The circumstances of two prescriptions for different patients, from the same doctor, for the same ailment (appetite control), filled on the same day, both ending up a week later in the possession of one person who was not the patient named in either prescription, strongly suggest that Forbes' possession of the drugs was unlawful. In light of the inferences raised by this evidence, Latson's testimony that she authorized Forbes to return her tablets to the doctor and the consent which might be implied from Smith's presence in the car at the time of the arrest were not compelling evidence of a conclusive defense but merely raised factual issues to be settled by the jury. [16] The evidence derived

14. *See* text 169 U.S.App.D.C. p. ——, 515 F.2d p. 678, *supra.*

15. At various points in these proceedings, appellant suggested that the introduction of the labels forced the Government to prove that the drugs were obtained without the consent of the patient or lose its case. (E. g., Tr. 46). This misreads the "agency defense" since it is

possible for one to possess prescription drugs with the consent of the patient and still not be acting as an agent "pursuant to the prescription." *See* n. 11, *supra.*

16. Latson's claim that she obtained the tablets to treat "a loss of appetite" (Tr. 50) makes her entire testimony inherently incredible. Phenmetrazine is described as a drug "exerting an

from the labels and from the circumstances surrounding the seizure of the drugs from Forbes was thus sufficient to sustain the jury's verdict without relying on any presumption that possession of controlled substances is unlawful.

## IV

Although the introduction of the labels did not create a prima facie defense for appellant to a charge of unlawful possession under section 844(a), we have indicated (*supra*, Part II) that appellant would have had a valid defense if he could have convinced the jury that he was in possession of the drugs pursuant to the prescription as the agent for Smith and Latson.

In its instructions to the jury, the court read the charged offense and the first sentence from section 844(a) and then stated:

> Now, what are the essential elements of the offense charged in this information which the Government must prove beyond a reasonable doubt for a conviction to follow on that information?
>
> They are these: First, that the defendant possessed a controlled substance; and secondly, that he did so knowingly and intentionally.

Tr. 88–89. Immediately thereafter the court instructed the jury that phenmetrazine was (as a matter of law) a controlled substance, that to support the alleged offense, possession of a measurable amount thereof was required to be proved, that possession "knowingly and

---

appetite-depressant effect. Used in the management of simple obesity." Stedman's Medical Dictionary, Third Unabridged Lawyer's Edition 955 (1972). *See also* Physician's Desk Reference (PDR) 624 (1975). It is highly unlikely that an appetite-depressant would be prescribed to correct a loss of appetite.

17. My proffer is that I would have argued to this jury that the Government is required to prove every element of the case and that the element of the case that the Government failed to prove here was the element of consent; that the officers had in their possession at one time a witness; that the witness had a prescription drug nearby.

intentionally" as used in the statute had the meanings stated to the jury, and that knowledge and intention could be proven by conduct and by all the facts and circumstances of the case. Otherwise, so far as the instructions were concerned, the jury was free to conclude that proof beyond a reasonable doubt of "the essential elements" of knowing and intentional possession of a controlled substance was all that was required to prove the offense.

The only testimony presented by the defense, that of Deena Latson, had only one purpose—to show that Forbes possessed the vial of Preludin identified as Exhibit 2A as her agent. In addition, defense counsel made a "proffer" of what he had intended to argue to the jury before certain adverse rulings by the trial court, the language of which suggests that he at one point planned to argue that the proximity of Smith at the time of the arrest implied that Forbes possessed Exhibit 2B with Smith's consent.[17]

In view of the introduction of the prescription labels, the testimony of Deena Latson, and the presence of Kenny Smith in the car with Forbes when the latter was arrested in possession of the Latson and Smith tablets, the jury should have been instructed concerning the "unless" clause of section 844(a), *i. e.*, the role of the prescription labels as a defense to the charge and as to the effect on their verdict if they found that Forbes possessed the drugs as agent for Latson or Smith.[18]

---

Tr. 59. The court stated that this argument was "not consistent with my interpretation of the statute." *Id.* While the court correctly determined that the Government did not have the burden of negating consent and that the "missing witness" instruction defense counsel was seeking was inappropriate, the theory of agency implicit in this argument was a proper issue to argue that the jury should infer from the proximity of Smith and Forbes. Of course, the mere fact of Smith's consent would not be a defense unless the agency in Forbes was shown to be consistent with the prescription.

18. We recognize that the agency issue was inartfully raised (Tr. 54) and that the point was obscured by, and involved with, appel-

■ We have previously indicated that as a general rule, whatever any person is legally capable of doing himself, he can do through another as his agent. So, if the acts or conduct of a person are willfully ordered or directed, or willfully authorized or consented to by another person, who is called the principal, then the law holds that such acts by the agent shall be considered to have been done by the principal the same as if personally done by him.[19] Applying this law to the facts here, the jury should have been instructed that if they found that Forbes had been authorized by Latson to return the drugs to Dr. Burton for her, and that at the time he was arrested he was so acting with respect to the tablets in the container with the Latson label, the case would be concluded insofar as the possession of the 23 tablets in the Latson container was concerned and they should then proceed to consider the 27 tablets in the Smith container. As for these drugs, a similar charge on agency was justified in order to submit to the jury the factual issue as to whether consent to Forbes' possession might be implied from Smith's presence with Forbes in the car at the time Forbes was arrested in possession of Smith's tablets.

Thus, while we agree that the court correctly interpreted the statute as providing that possession by Forbes was not lawful just because Latson and Smith had obtained the drugs on valid prescriptions in the first instance, we vacate the judgment and remand the case for a new trial because of the failure to instruct on the agency issues which the evidence presented.[20] The jury was entitled to be instructed on, and to consider, this evidence for whatever it was worth in their determination of the issue of lawful possession.

Judgment accordingly.

lant's insistent and erroneous claim that he was entitled to a judgment of acquittal because of the government's failure to rebut what he believed to be the statutory effect of the label and the prescription. Also, as more fully stated above, the agency of Latson, even if believed by the jury, was not a complete defense because there was no direct testimony explaining Forbes' possession of the Smith tablets. While defense counsel never formally requested an instruction on agency, we believe that this failure can be excused under the particular circumstances of this case since defense counsel could have reasonably concluded that, based on the various rulings by the trial court on his prior arguments, such a request would have been futile. See Tr. 59.

19. Based on 1 Federal Jury Practice and Instructions § 11.12, Devitt and Blackmar, p. 223.

20. Our holding is not meant to imply that if the jury had been fully instructed, there were not sufficient factual circumstances in the record from which it could conclude that Forbes' possession was unlawful. As we indicated in Part III, supra, the jury could evaluate the circumstances surrounding the seizure of the tablets and the information conveyed in the labels in determining whether possession by Forbes was lawful. Furthermore, if it concluded that the prescriptions had been obtained by Latson and Smith, not for their own purposes, but rather for Forbes' purposes, a verdict of guilty would be appropriate.