COMMONWEALTH *vs.* JOHN R. HORAN
(and eleven companion cases [1]).

Worcester. December 6, 1971. — January 6, 1972.

Present: TAURO, C.J., CUTTER, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Constitutional Law,* Delay in commencement of prosecution, Due
process of law. *Practice, Criminal,* Delay in commencement of
prosecution, Fair trial.

A lengthy delay between the time of an offence and the time of an
indictment therefor does not by itself require dismissal of the
indictment: the defendant must show that the pre-indictment delay
caused substantial prejudice to his right to a fair trial and that the
delay was a purposeful device on the prosecution's part to gain a
tactical advantage over the defendant. |740–741|

A delay of thirty-one months between the time a span of a bridge
collapsed, killing three people, and the time of indictments for
manslaughter did not require dismissal of the indictments where
there was no showing that the delay was intentionally caused by
the prosecution to gain some tactical advantage or that the deaths
of three witnesses during the delay prejudiced the defendants, and
it appeared that the delay was a result of extensive investigation of
the incident, including a proceeding before a board of inquiry and
an inquest, and that the testimony of most witnesses, who were
examined within a year of the accident, was available. |740–742|

INDICTMENTS found and returned on November 17, 1970.

Motions to dismiss the indictments were heard by
*Beaudreau,* J.

*Francis X. Bellotti* for the defendant Prosser.

*Leo V. Concannon* for the defendant Horan.

*Monroe L. Inker* for the defendant McGarrahan Company.

*John P. White, Jr.,* for the defendant Viglione.

*Stanley J. Jablonski,* Assistant District Attorney, for
the Commonwealth.

---

[1] The companion cases are: two against John R. Horan, three against
Owen J. McGarrahan Co. (the subcontractor), three against Adelbert V.
Prosser (the foreman in charge), and three against Walter Viglione (super-
vising foreman in charge). Horan was resident engineer for the Department
of Public Works.

Commonwealth *v.* Horan.

BRAUCHER, J. On April 16, 1968, a span of a bridge under construction in Worcester collapsed. Three persons were killed and eight injured. Thirty-one months later, on November 17, 1970, the four defendants were indicted for manslaughter. The defendants moved to dismiss the indictments on the ground of delay. Twelve days of hearings on the motions were held in March and April, 1971, and on May 7, 1971, the judge reported the case to this court pursuant to G. L. c. 278, § 30A.

1. The judge stated that he was aware of no cases in this Commonwealth which have specifically considered the problem of alleged prosecutorial delay in seeking an indictment, and posed the question whether the rule in *Commonwealth* v. *Green*, 353 Mass. 687, 690, "that prejudice need not be affirmatively shown" in cases of long delay, is applicable in cases of pre-indictment delay. He was "unable to determine the test to be applied in this case," and believed that the motions "raise questions of law which are both doubtful and important and require a decision."

After this report was made, in *Commonwealth* v. *Jones*, *ante*, 498, 501, we considered a case of delay in serving a complaint warrant, prior to indictment, and were unwilling to hold that the mere delay "constitutes failure to afford a speedy trial, at least in the absence of 'much more than appears in the present case' (see *Schlinsky* v. *United States*, 379 F. 2d 735, 737 [1st Cir.]) in the way of substantial prejudice to a defendant's ability to defend himself, or a substantial showing of deliberately improper police conduct harming a defendant. See *United States* v. *DeMasi*, 445 F. 2d 251, 255–256 (2d Cir.), cert. den. 404 U. S. 882."

Since then, we have been authoritatively informed that the right to a speedy trial granted by the Sixth Amendment to the Constitution of the United States "has no application until the putative defendant in some way becomes an 'accused.'" *United States* v. *Marion*, 404 U. S. 307, 313. This does not occur until there is "either a formal indict-

ment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge." *Id.* at 320. In a Federal court, however, "the Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay . . . caused substantial prejudice to appellees' rights to a fair trial and that the delay was a purposeful device to gain tactical advantage over the accused." *Id.* at 324.

In that case the court said, "No actual prejudice to the conduct of the defense is alleged or proven, and there is no showing that the Government intentionally delayed to gain some tactical advantage over appellees or to harass them. Appellees rely solely on the real possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence lost. In light of the applicable statute of limitations, however, these possibilities are not in themselves enough to demonstrate that appellees cannot receive a fair trial and to therefore justify the dismissal of the indictment. Events of the trial may demonstrate actual prejudice, but at the present time appellees' due process claims are speculative and premature." *Id.* at 325–326.

2. We follow the Supreme Court of the United States. In this case as in the *Marion* case, there is no showing that the prosecutor intentionally delayed to gain some tactical advantage over the defendants or to harass them. In some of the motions it was alleged that there was prejudice in the loss of witnesses and physical evidence, and evidence was presented in support of those allegations, but the judge has made no findings of actual prejudice.

The judge reported the following facts relating to the reasons for delay. On April 26, 1968, ten days after the collapse, the Commissioner of the Department of Public Works convened a three-member board of inquiry, which filed its final report in October, 1968, consisting of 324 pages including exhibits. About April 30, 1969, the district at-

torney requested an inquest, and twenty-four days of hearings were held from June 16, 1969, to September 5, 1969. Because of the press of other business, the special justice who held the inquest did not file the 135 page inquest report until September 29, 1970, more than a year later. The district attorney presented the matter to the grand jury àt its next sitting in November, 1970, and the indictments were returned after four days of hearings.

The judge also made findings with respect to the available evidence. He regarded two exhibits as crucial: the final report of the board of inquiry and the inquest report. There was extensive investigation of the incident from the date of its occurrence. Most witnesses were interviewed or examined several times within one year, and their testimony is readily available. There was no transcript of testimony either at the inquest or before the grand jury, and no evidence was presented to the judge that was uncovered after December, 1968, except the inquest report and a statement by one of the defendants to the police. Three witnesses have died, but the judge concluded that one would have been of no assistance to the defendants and questioned whether a second would have been helpful. The Commonwealth contends that the inquest report shows that the third would not have been a material witness.

These facts fall far short of requiring dismissal of the indictments before trial under the standards of the *Marion* case.

3. The history of this case shows the disadvantages of the report procedure as well as of premature consideration of prejudice resulting from pre-indictment delay. We imply no criticism of the judge, who faced the prospect of a trial lasting four to eight months and did not have available to him the authoritative guidance we now have. But the net result of the procedure here has been to add at least eight months of post-indictment delay. Hearings on motions before trial are already an important cause of congestion and delay, and interlocutory appeals and reports should not be

permitted to become additional such causes. See *Commonwealth* v. *Benjamin*, 358 Mass. 672, 673, note 1.

4. The motions to dismiss the indictments on the ground of delay are to be denied. The cases are to stand in the Superior Court for prompt further proceedings consistent with this opinion.

*So ordered.*