## JAMES WINSTON SMALLWOOD v. STATE OF MARYLAND

[No. 1066, September Term, 1981.]

*Decided April 13, 1982.*

The cause was argued before GILBERT, C. J., and MOYLAN and LOWE, JJ.

*Cynthia E. Young, Assigned Public Defender,* for appellant.

*Bruce C. Spizler, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

This case involves a conviction for a May 1975 bank robbery [1] at a November 1980 trial on a September 1979 indictment. Expectantly, pre-indictment delay is the major issue on appeal.

## THE FACTS

The record discloses that a jury in the Circuit Court for Calvert County, presided over by Judge Perry G. Bowen, Jr., found James Winston Smallwood to be one of three men who held up the Maryland Bank and Trust Company in Lexington Park, Maryland, on May 19, 1975. Smallwood was determined by the jury to be guilty of 1) robbery with a dangerous and deadly weapon; and 2) grand larceny. For the purpose of sentencing, Judge Bowen merged the latter conviction with the former and imposed a term of 20 years imprisonment "to run consecutively to any sentence previously imposed by any other court." [2]

## PRE-INDICTMENT DELAY

Appellant asserts that his "due process rights were violated by the State's lengthy pre-indictment delay." [3]

### I.

The Supreme Court in *United States v. Lovasco,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977), amplified its holding in *Hoffa v. United States,* 385 U.S. 293, 310, 87 S.Ct. 408, 417, 17 L.Ed.2d 374, 386 (1966), that "[t]here is no constitutional right to be arrested," by declaring that "pros-

---

1. The record reveals the amount taken from the bank in the robbery to be $49,550.

2. We were told on oral argument that Smallwood is currently serving a "60 year to life term" in Leavenworth, Kansas.

3. Originally, the issue put to us was "Appellant's Fifth Amendment Due Process Rights Were Violated By The State's Lengthy Pre-indictment Delay." When Judge Moylan observed from the Bench that the Supreme Court has never held the Fifth Amendment Due Process Clause applicable to the States, counsel for Smallwood willingly amended the issue.

ecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt." 431 U.S. at 791, 97 S.Ct. at 2049, 52 L.Ed.2d at 760. Not only would prosecutions commenced solely on probable cause be a helter-skelter undertaking, but they would wreak havoc with an accused's pocket book, emotions, family, liberty, and life and subject the accused to public scorn.[4] *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

Justice Marshall in *Lovasco* penned that there was no "clear constitutional command" within "the Due Process Clause of the Fifth Amendment" that would require that Court to "adopt a rule" mandating prosecution immediately upon a showing of probable cause. 431 U.S. at 795, 97 S.Ct. at 2051, 52 L.Ed.2d at 762.

There are a number of reasons why the Court would avoid such a rule:

1) An immediate arrest or indictment of a person might impair, if not preclude, the bringing of charges against other persons involved in the same criminal act; 2) Even if the immediate arrest or indictment did not foreclose the State's right to proceed against other persons, perceived jointly or severally criminally liable, such indictment might well lead to multiple trials rather than one joint trial. The savings in time and money of a single trial are too obvious to require explanation; 3) Arrest or indictment on the basis of probable cause alone will inevitably lead to the trial of a number of cases where there is little if any chance of proving guilt beyond a reasonable doubt; 4) The increase in the number of cases brought to trial will strain an already overburdened system and add to the onus borne by the taxpayers who ultimately must foot the bill for the total costs of most prosecutions;[5] 5) The guilty may escape convictions because

---

**4.** While in law each person is presumed innocent until proven guilty, in society, however, accusation has unfortunately become synonymous with guilt, indictment with conviction.

**5.** Excepted are those costs assumed by the defendant where private counsel is obtained.

prosecutions are brought before the State obtains adequate evidence to sustain a conviction; 6) Making a decision to prosecute immediately upon obtaining probable cause would tend to preclude the prosecutor's deciding that a prosecution was, under the circumstances, unjustified. "The decision to file criminal charges, with the awesome consequences it entails, requires consideration of a wide range of factors in addition to the strength of the . . . [State's] case, in order to determine whether prosecution would be in the public interest." (Footnote omitted). 431 U.S. at 794, 97 S.Ct. 2051, 52 L.Ed.2d at 761-62.

The American Bar Association Project on Standards for Criminal Justice, The Prosecution Function § 3.9 (App. Draft 1979), states that prosecutors are not obligated to prosecute everyone charged with a crime or crimes. Cases do arise when the prosecutor, consistent with the public interest, will decline to prosecute, notwithstanding that the evidence will likely support a conviction. Section 3.9 lists several "factors which the prosecutor may properly consider in exercising his or her discretion. . . ." Those factors are:

"(i) the prosecutor's reasonable doubt that the accused is in fact guilty;

(ii) the extent of the harm caused by the offense;

(iii) the disproportion of the authorized punishment in relation to the particular offense or the offender;

(iv) possible improper motives of a complainant;

(v) reluctance of the victim to testify;

(vi) cooperation of the accused in the apprehension or conviction of others; and

(vii) availability and likelihood of prosecution by another jurisdiction." [6]

---

**6.** Section 3.9 of the ABA Project on Standards for Criminal Justice, The Prosecution Function (App. Draft 1979), goes on to say:

"(c) In making the decision to prosecute, the prosecutor should give no weight to the personal or political advantages or

In short, "Delay is preferable to error." [7]

## II.

*Lovasco* was, as we have seen, concerned with the Due Process Clause of the Fifth Amendment. That particular clause of the Fifth Amendment, however, has never been held applicable to the States, and, therefore, *Lovasco* is not binding upon us.

Nevertheless, Smallwood is not left adrift in a litigious sea sans sail or oar. On the contrary, available for his protection and applicable are the Declaration of Rights to the Maryland Constitution and the Due Process Clause of the Fourteenth Amendment to the Federal Constitution. We shall now consider each of those protections.

## III.

Maryland has no statute prescribing the time in which a prosecution for a felony must be commenced.[8] When, as here, there is no such statute, we turn to the common law in order to ascertain the applicable period of limitations, if any. The reason for our turning to the common law is found in the State Constitution. There, in Article 5 of the Declaration of Rights, Constitution of Maryland, it is mandated "[t]hat the

---

disadvantages which might be involved or to a desire to enhance his or her record of convictions.

(d) In cases which involve a serious threat to the community, the prosecutor should not be deterred from prosecution by the fact that in the jurisdiction juries have tended to acquit persons accused of the particular kind of criminal act in question.

(e) The prosecutor should not bring or seek charges greater in number or degree than can reasonably be supported with evidence at trial."

**7.** Thomas Jefferson in a letter to George Washington dated May 16, 1792.

**8.** Moreover, there is no statute of limitations with respect to misdemeanors punishable by imprisonment in the penitentiary. *See* Md. Cts. & Jud. Proc. (1980 Repl. Vol.) Code Ann. § 5-106. *See also* Schaumloeffel v. State, 102 Md. 470, 62 A. 803 (1906).

Inhabitants of Maryland are entitled to the Common Law of England" and acts of Parliament as they existed on July 4, 1776. "At common law, criminal proceedings may be instituted at any time during the life of an offender." Hochheimer, *Law of Crimes and Criminal Procedure* § 87 (1897); 1 Wharton, *Criminal Law* (14th Ed. 1978) § 90. *Accord,* Clark & Marshall, *The Law of Crimes* § 6.20 (7th Ed. 1967). *See also Archer v. State,* 145 Md. 128, 138, 125 A. 744, 750 (1924). Thus, it is clear that any indictment, otherwise validly brought against Smallwood for the bank robbery of May 19, 1975, will not fail merely because it was handed down by the Grand Jury for St. Mary's County[9] more than four years after the offense was committed.

## IV.

Having established that there is no statutory or common law bar to the prosecution of Smallwood, we now examine whether there is a Maryland Constitutional barrier to his prosecution.

Article 24 of the Declaration of Rights to the Maryland Constitution provides:

> "[N]o man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the *Law of the land."* (Emphasis supplied).[10]

The phrase "Law of the land" has been consistently "equated" [11] to "due process of law" as that term is employed

---

**9.** At the suggestion of the appellant, the case was removed from St. Mary's County where the crime occurred to Calvert County.

**10.** There is a similarity between the Statute of Westminster, 28 Edw. III (1354) and the present Art. 24 of the Maryland Declaration of Rights above quoted. The Statute of Westminster provides:

"That no man of whit estate or condition shall be put out of land or tenement, nor taken nor imprisoned, nor disinherited, nor put to death, without being brought in answer by due process of law."

**11.** Notwithstanding the annotations in Michie, *Constitutions,* (1981

in the Constitution of the United States of America. *Pitsenberger v. Pitsenberger,* 287 Md. 20, 410 A.2d 1052, *appeal dismissed,* 449 U.S. 807 (1980); *Crawford v. State,* 285 Md. 431, 452, 404 A.2d 244, 254 (1979); *Mazor v. State, Dept. of Correction,* 279 Md. 355, 369 A.2d 82 (1977); *Northhampton Corp. v. Washington Suburban Sanitary Commission,* 278 Md. 677, 366 A.2d 377 (1976); *Aero Motors, Inc. v. Administrator, Motor Vehicle Administration,* 274 Md. 567, 587, 337 A.2d 685, 700 (1975); *The Baltimore Belt Railroad Co. v. Baltzell,* 75 Md. 94, 99, 23 A. 74, 76 (1891), and decisions of the Supreme Court with respect to the due process clause of the Fourteenth Amendment "are practically direct authorities." *Sanner v. Trustees of Sheppard And Enoch Pratt Hospital,* 278 F. Supp. 138 (D. Md.), *aff'd,* 398 F.2d 226 (4th Cir.), *cert. denied,* 393 U.S. 982 (1968); *Northhampton Corp. v. Washington Suburban Sanitary Commission, supra,* 278 Md. at 686, 366 A.2d at 383; *Bureau of Mines v. The George's Creek Coal & Land Co.,* 272 Md. 143, 321 A.2d 748 (1974); *Allied American Mutual Fire Insurance Co. v. Commissioner,* 219 Md. 607, 616-17, 150 A.2d 421, 427 (1959).

In discussing pre-indictment delay, one should bear in mind that the Sixth Amendment right to a speedy trial is not involved. That constitutional principle is not operable until " 'the putative defendant in some way becomes an "accused. . . ." ' " *State v. Hamilton,* 14 Md. App. 582, 586, 287 A.2d 791, 793 (1972), *quoting United States v. Marion, supra* at 459; *State v. Lawless,* 13 Md. App. 220, 229-30, 283 A.2d 160, 168 (1971). *See United States v. MacDonald,* 30 Cr. L. 3111 (1982).

This Court, in *State v. Hunter,* 16 Md. App. 306, 311, 295 A.2d 779, 782 (1972), interpreted *Marion* and *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

---

Rep. Vol.) to Article 24 of the Declaration of Rights, "Law of the land" has not been held to be "synonymous" with "due process of law." Aero Motors v. Adm'r, M.V.A., *infra* makes that point clear when it states that "the two provisions are not synonymous." 274 Md. at 587.

We said with respect to the Sixth Amendment speedy trial provision:

> "[I]t is patent that in order to calculate a constitutionally proscribed delay in bringing a matter to trial, we must look back to the date of the commencement of a prosecution by way of arrest, warrant, information or indictment, whichever shall first occur, and then forward to the date of the trial or hearing."

That triggering mechanism is inapposite in the instant case because, as Judge Moylan observed for this Court in *Lawless,*

> "Although a general 'due process' right may be involved, there is no 'speedy trial' right guarding against undue delay in the pre-indictment or pre-arrest phase of a criminal proceeding." (Footnote omitted).

The only Maryland case that we have found that discusses pre-indictment delay is *Dorsey v. State,* 34 Md. App. 525, 537, 368 A.2d 1036, 1044 (1977). There, Judge Moore, for this Court, said:

> "[A]bsent a showing of actual prejudice, compared to possible prejudice, 'the applicable statute of limitation ... is usually considered the primary guarantee against bringing overly stale criminal charges.' ... *Where a defendant can demonstrate actual prejudice,* however, in circumstances where the delay between the occurrence of the criminal offense and the date of arrest or indictment is unduly long and the actions of the State in delaying were unreasonable, deliberate and oppressive, the due process clause would demand a dismissal of the indictment." (Citations omitted).

*Dorsey,* decided before *Lovasco,* was not quite as forcible as our Nation's highest Court chose to be in *Lovasco.* There,

the Supreme Court made clear that *something more than actual prejudice to an accused was necessary before an indictment could be dismissed on Fifth Amendment due process grounds.*

Although *Lovasco* was decided on the basis of the Due Process Clause of the Fifth Amendment, we perceive no reason in this case to address whatever distinction there may be between the due process clause of the Fifth Amendment and that of the Fourteenth Amendment. We shall, in the matter *sub judice,* treat "due process," whether in the Fifth or the Fourteenth Amendment, as being equated to the "Law of the land."

"[T]he Due Process Clause," Justice Marshall wrote, "does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment." 431 U.S. at 790, 97 S.Ct. at 2049, 52 L.Ed.2d at 759. "Judges," he said, "are not free, in defining 'due process,' to impose on law enforcement officials ... 'personal and private notions' of fairness and to 'disregard the limits that bind judges in their judicial function.' *Rochin v. California,* 342 U.S. 165, 170 [72 S.Ct. 205, 209, 96 L.Ed. 183, 189 (1952)."] *Id.*

*Lovasco* defined the task of a court to be that of determining "only whether the action complained of — ... compelling ... [a defendant] to stand trial after the ... [State] delayed indictment to investigate further — violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions.' " *Id.*

One plain message of *Lovasco* is that judges are not free to interpret "due process" in a manner consistent with their own particular notions of fundamental fairness. Due process requires the application of the law as it is, not as one might like or prefer the law to be.

We think due process to be an idea, a concept, not some rigid crystal-like structure that will fracture and crumble with the least deviation or variation. On the contrary, "due process" is flexible and adaptable to particular facts and circumstances.

From *Lovasco* and the progeny it has sired,[12] we distill a two-pronged conjunctive test, *i.e.,* those who assert pre-indictment delay must prove:

1)  actual prejudice to the accused

*and*

2)  that the delay was purposefully made by the State to gain a tactical advantage over the accused.

It is the required showing of *actual prejudice* that distinguishes Sixth Amendment speedy trial matters from the Fourteenth Amendment "Due Process" and Article 24 "Law of the land" cases. The distinction is not a matter of mere semantics; it is crucial because in Sixth Amendment cases, "prejudice" may be presumed from delay, but in pre-indictment delay — "Due Process-Law of the land" matters — prejudice may not be presumed but must be proven.[13]

To show prejudice, Smallwood, in the case now before us, asserted that a witness, one "Murphy," whose first name and address are unknown, may be of some importance as a defense witness, but he now *may* be dead. Smallwood made no

---

**12.** Martinez v. Romero, 661 F.2d 143 (10th Cir. 1981)

United States v. Henry, 615 F.2d 1223 (9th Cir. 1980)

United States v. Cerrito, 612 F.2d 588 (1st Cir. 1979)

United States v. Elsberry, 602 F.2d 1054 (2d Cir.), *cert. denied,* 444 U.S. 994 (1979)

United States v. Blevins, 593 F.2d 646 (5th Cir. 1979)

Arnold v. McCarthy, 566 F.2d 1377 (9th Cir. 1978)

United States v. Juarez, 561 F.2d 65 (7th Cir. 1977)

Chambliss v. State, 373 So.2d 1185 (Ala. Cr. App. 1979)

Burke v. State, 624 P.2d 1240 (Alaska 1980)

Coffey v. State, 585 P.2d 514 (Alaska 1978)

State v. Hall, 129 Ariz. 589, 633 P.2d 398 (1981)

State v. Murphy, 99 Idaho 511, 584 P.2d 1236 (1978)

People v. Lawson, 67 Ill. 2d 449, 367 N.E.2d 1244 (1977)

State v. McCorgary, 224 Kan. 677, 585 P.2d 1024 (1978) (ten year delay)

State v. Royal, 217 Kan. 197, 535 P.2d 413 (1975)

Commonwealth v. Imbruglia, 377 Mass. 682, 387 N.E.2d 559 (1979)

Commonwealth v. Horan, 360 Mass. 739, 277 N.E.2d 491 (1972).

**13.** United States v. Henry, 615 F.2d 1223 (9th Cir. 1980).

proffer as to what "Murphy" would say if present, nor was there the slightest indication as to what "Murphy" knew about the case.

On the basis of what may be the mythical Mr. Murphy, Smallwood asseverates that he has shown actual prejudice. We have an entirely different view.

The law is clear that one who avers that he or she has been prejudiced by a delay in indictment must prove actual prejudice. A mere allegation as to the existence of a defense witness, whose surname is similar to that of hundreds of thousands of other persons, and whose given name and whereabouts are unknown, will not suffice to demonstrate actual prejudice, nor will it reach that plateau by combining it with a bald claim that the witness may now be dead.

We think Smallwood has failed the first tine of the pre-indictment delay two-pronged test. Since the test is, as we have previously stated, conjunctive and requires satisfying both tines, there is no need for us to consider the question of purposeful delay.[14]

## SPEEDY TRIAL

Smallwood next asserts that his "rights to a speedy trial pursuant to the Sixth Amendment were violated."

The indictment was handed down by the Calvert County Grand Jury on September 13, 1979. On April 17, 1980, the appellant, in proper person, filed a motion to dismiss the indictment for lack of a speedy trial and denial of counsel. Approximately two months later, an arraignment was held and counsel entered his appearance the next day, June 2, 1980.

In this Court, the appellant argues that "the State's delay from March 24, 1980 until trial on November 20, 1980 was prejudicial to Appellant's Sixth Amendment rights to a speedy trial."

The delay in the instant case was a period of slightly less

---

14. We are not to be understood as implying any "purposeful delay."

than 8 months. While the State is chargeable with the delay between March 24, 1980, and June 2, 1980, the date on which counsel for the appellant entered his appearance, that delay comprised 70 days.

The entire period of less than eight months with almost six of those months being caused by the appellant's request for removal of his case from St. Mary's County to elsewhere, does not, in our view, tip the *Barker-Wingo* scale in favor of appellant. As we see it there was no denial of a speedy trial.

## EFFECTIVE ASSISTANCE OF COUNSEL

Smallwood contends that his "rights to effective assistance of counsel were violated by the delay in appointment of counsel."

Appellant was indicted in September 1979, but counsel did not enter an appearance on behalf of Smallwood until June 2, 1980. The case was tried on November 20, 1980, a period of 5 months after counsel entered the case.

Appellant does not attack the competency of his attorney, but what appellant perceives to be an insufficient time for his counsel to prepare for trial. Interestingly, counsel did not complain.

We think that 5 months is ample time in ordinary cases to prepare for trial, and there is nothing to suggest that this case is extraordinary, thus requiring more than a normal preparation. Our review of the record indicates that counsel was well prepared and so conducted himself at trial. Smallwood's attack on the assistance of counsel is nothing more than a desperate grasp for straws or a whistling in the wind; it is, by any standard, utterly and completely balderdash.

## SUFFICIENCY OF THE EVIDENCE

Lastly, Smallwood argues that the evidence was insufficient to establish his criminal agency. In order for us

to agree with him, we would have to discount to naught the testimony of the witness, Raymond Norton.

Norton told the jury that on the day of the robbery, Smallwood and a co-perpetrator went to Norton's apartment, and that the other perpetrator admitted to Norton that Smallwood and the other person had robbed the bank. Norton stated that he saw a large pile of money in front of Smallwood while the latter was seated. Norton was indicted in connection with the crime as an accessory after the fact. As an accessory after the fact, his testimony did not have to be corroborated, *Watson v. State,* 208 Md. 210, 117 A.2d 549 (1955); *Gardner v. State,* 6 Md. App. 483, 251 A.2d 901 (1969), but merely believed by the jury. Obviously, it was believed, else no conviction would have resulted.

Suffice to say that the evidence in the case now before us was sufficient to sustain the convictions.

*Judgments affirmed.*
*Costs to be paid by appellant.*