**Anthony Greene v. State of Maryland**, No. 820, September Term, 2017

**CRIMINAL LAW – CONSTITUTIONAL SPEEDY TRIAL AND DUE PROCESS RIGHTS –** Holding that the trial court did not abuse its discretion in determining that the State acted in good faith in twice *nolle prossing* the charges against appellant so that the delay caused by the *nolle prosses* did not count in a constitutional speedy trial analysis. Additionally, the trial court did not abuse its discretion in determining that appellant failed to show that he suffered actual prejudice by the pre-indictment delay or that the delay was the product of a deliberate act by the State to gain a tactical advantage. Accordingly, appellant failed to establish a violation of his constitutional speedy trial or due process rights.

**CRIMINAL LAW – SUBJECT MATTER JURISDICTION – LESSER INCLUDED OFFENSE –** Holding that possession of a prescription drug without a valid prescription, *see* Md. Code Ann., §5-601(a)(1), is a lesser included offense of possession of a prescription drug with the intent to distribute, *see* Md. Code Ann., § 5-602(2) because the lack of a valid prescription is not an element of the former crime but an affirmative defense.

Circuit Court for Montgomery County
Case No. 129119

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 820

September Term, 2017

_____

ANTHONY GREENE

v.

STATE OF MARYLAND

_____

Eyler, Deborah S.,
Meredith,
Alpert, Paul E.
    (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Alpert, J.
_____

Filed: June 8, 2018

Anthony Greene, appellant, was convicted in two separate trials by a jury sitting in the Circuit Court for Montgomery County of drug related crimes. In the first trial, a jury convicted him of possession of cocaine. In the second trial, a jury convicted him of possession of clonazepam, possession of alprazolam, and two counts of possession of oxycodone.[1] Appellant appeals from both cases, raising two questions, which we have rephrased slightly:

I.     Did the trial court err when it denied his motion to dismiss his first trial because his constitutional speedy trial and due process rights had been violated?

II.    Did the trial court err when it allowed the jury in his second trial to convict him of lesser included offenses for which he was not charged?

For the following reasons, we shall affirm the judgments.

**PROCEDURAL FACTS**

The facts of each particular trial are not in issue, for the two questions appellant raises concern legal issues. To answer the questions raised, we shall provide an overview of the procedural facts followed by greater detail in the discussion section below.

On March 17, 2016, appellant was charged in a 13-count indictment with various offenses involving alleged drug dealing on five different dates. Specifically, appellant was charged as follows:

Count 1 -- July 6, 2015 – distribution of cocaine

---

[1] Appellant was sentenced in his first trial to four years of imprisonment. Appellant was sentenced in his second trial to consecutive two-year terms of imprisonment for each of his possession of oxycodone, clonazepam, and alprazolam convictions, suspending those sentences on all but one of his possession of oxycodone convictions, for a combined total sentence of six years of imprisonment.

Counts 2-4 -- July 13, 2015 – possession of cocaine with the intent to distribute; possession of hydrocodone with the intent to distribute; and possession of hydrocodone

Counts 5-6 -- September 30, 2015 – possession with the intent to distribute cocaine and possession of cocaine

Count 7 -- December 14, 2015 – distribution of cocaine

Counts 8-13 -- January 11, 2016 – two counts of possession with the intent to distribute oxycodone; possession with the intent to distribute alprazolam (Xanax); possession of alprazolam; possession with the intent to distribute clonazepam (Klonopin); and possession of hydromorphone (Dilaudid)

On June 29, 2016, appellant filed a written motion to dismiss the first six counts of the indictment against him, arguing, among other things, that the State had failed to bring him to trial on those counts in a timely manner, and therefore, the court should dismiss his case because the State had violated his constitutional rights to a speedy trial and due process. Appellant focused on the fact that the State had twice *nol prossed* and re-charged those counts before the March 17th indictment. The State filed a written motion opposing appellant's motion, arguing that it had acted in good faith in *nol prossing* and re-charging the counts, and there were no constitutional violations.

On July 14, 2016, a hearing was held on appellant's motion. Appellant specifically stated at the hearing that his speedy trial and due process arguments apply only to the first six counts in the March 17, 2016 indictment. Based on the record and argument, the court found no bad faith by the State and ruled that any delay was not of constitutional dimension. The court denied the motion, ruling that there had been no violation of appellant's speedy trial or due process rights. On August 18, 2016, the circuit court granted appellant's motion to sever the charges, holding that they were not mutually admissible at one trial.

2

On September 6, 2016, appellant was tried on the charges alleging illegal drug activity on July 13, 2015 (counts 2 through 4). He was ultimately convicted of possession of cocaine with the intent to distribute. After the court granted appellant's motion for a new trial, he was re-tried on December 19, 2015, and, as stated above, he was found guilty of simple possession of cocaine.

On September 8, 2016, appellant was tried on the charges alleging illegal drug activity on January 11, 2016 (counts 8 through 13). As stated above, he was convicted of four simple possession counts: possession of clonazepam, possession of alprazolam, and two counts of possession of oxycodone.

Appellant was sentenced on June 26, 2017 in both trials. He filed a direct appeal for review in our court the following day. We shall provide additional facts below to answer the questions raised.

## DISCUSSION

### I.

Appellant argues on appeal that the circuit court erred when it denied his motion to dismiss the charges that alleged criminal conduct on July 13, 2015, because the State failed to bring his case to trial in a timely manner in violation of his speedy trial and due process rights. As to his speedy trial claim, appellant specifically argues that the delay between the date of his arrest and the start of his first trial, a delay of 14 months, was of constitutional dimension and that the balancing of the four factors in *Barker v. Wingo*, 407 U.S. 514 (1972) weigh in favor of dismissal. The State disagrees and counters that because it had acted in good faith in *nol prossing* and re-charging those counts, the triggering date was

3

the day of the last indictment: March 17, 2016. The State then argues that the delay between that date and the date when the circuit court denied his motion, a delay of four months, was not of constitutional dimension. The State also argues that appellant's due process argument is without merit because appellant failed to show actual prejudice or that the State had caused the delay with the intent to gain a tactical advantage over him.

### A. Sixth Amendment speedy trial violation?

We review the trial court's denial of a motion to dismiss on speedy trial grounds by conducting a *de novo* constitutional analysis. *Glover v. State*, 368 Md. 211, 220 (2002) (citations omitted). *See also Jules v. State*, 171 Md. App. 458, 481-82 (2006) (citing *Glover*, *supra*), *cert. denied*, 396 Md. 525 (2007). Nonetheless, we defer to the trial court on the findings of historical facts, unless clearly erroneous. *Glover*, 368 Md. at 220-21 (citations omitted). A finding of fact is clearly erroneous, not when the fact is "weak, shaky, [or] improbable," but rather when it has "no evidentiary basis whatsoever[.]" *State v. Brooks*, 148 Md. App. 374, 399 (2002). *See also Figgins v. Cochrane*, 403 Md. 392, 409 (2008) ("If any competent material evidence exists in support of the trial court's factual findings, those findings cannot be held to be clearly erroneous.") (quotation marks and citations omitted).

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]" U.S. Const. Amend. VI. This right is applied to the States through the Fourteenth Amendment. *Klopfer v. North Carolina*, 386 U.S. 213, 222-23 (1967). We apply the balancing test articulated by the United States Supreme Court in *Barker*, *supra*, to determine whether a defendant's constitutional speedy

4

trial right has been violated. *State v. Kanneh*, 403 Md. 678, 687 (2008) (citation omitted). The four factors of a *Barker* analysis consist of the length of the delay, the reason for the delay, the defendant's assertion of his right to a speedy trial, and any prejudice to the defendant because of the delay. *Divver v. State*, 356 Md. 379, 388 (1999) (citation omitted). "None of the four factors is either a necessary or sufficient condition to finding a denial of speedy trial rights. . . . Rather they are related factors and must be considered together with such other circumstances as may be relevant." *Id.* at 394 (quotation marks, citations, and brackets omitted).

The initial *Barker* factor "is actually a double enquiry." *Doggett v. United States*, 505 U.S. 647, 651 (1992).

> [T]o trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay . . . since, by definition, he cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness.

*Id.* at 651-52 (citation omitted). "If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Id*. at 652 (citation omitted). The length of delay for speedy trial analysis is measured from the earlier of the date of arrest, filing of indictment, or other formal charges, to the date of trial. *United States v. Marion*, 404 U.S. 307, 320-21 (1971). *See also In re Thomas J.*, 372 Md. 50, 73 (2002) ("'the length of delay is measured from the date of arrest or filing of indictment, information, or other formal charges to the date of trial.'") (quoting *Divver*, 356 Md. at 388-89).

In *United States v. MacDonald*, 456 U.S. 1 (1982), the United States Supreme Court held that "the Speedy Trial Clause has no application after the Government, acting in good faith, formally drops charges." *MacDonald*, 456 U.S. at 7. "Once charges are dismissed, the speedy trial guarantee is no longer applicable." *Id.* at 8 (footnote omitted). The Supreme Court stated that any undue delay after the Government, acting in good faith, dismisses charges must be scrutinized under the Due Process Clause of the Fifth Amendment, not the Speedy Trial Clause of the Sixth Amendment. *Id.* at 7. The Supreme Court reasoned as follows, why a dismissal of charges in good faith operates to start the speedy trial clock anew from the date of the filing of the new charging document:

> [T]he formerly accused is, at most, in the same position as any other subject of a criminal investigation. Certainly the knowledge of an ongoing criminal investigation will cause stress, discomfort, and perhaps a certain disruption in normal life. . . . But with no charges outstanding, personal liberty is certainly not impaired to the same degree as it is after arrest while charges are pending. . . . Following dismissal of charges, any restraint on liberty, disruption of employment, strain on financial resources, and exposure to public obloquy, stress and anxiety is no greater than it is upon anyone openly subject to a criminal investigation.

*Id.* at 8–9.

The Maryland Court of Appeals formally recognized the *MacDonald* good-faith exception in *State v. Henson*, 335 Md. 326, 338 (1994). In *Henson*, the Maryland Court of Appeals held that the State terminates a prosecution in "good faith" when the State "does not intend to circumvent the speedy trial right, and the termination does not have that

6

effect[.]"[2] *Id.* If those two factors are present, "the period preceding the earlier dismissal is not counted in the speedy trial analysis." *Id. See also Nottingham v. State*, 227 Md. App. 592, 614 (2016) ("[S]o long as the State acted in good faith, the *nolle prosequi* terminates the original prosecution, and the speedy trial clock starts anew from the date of the filing of the new charging document.") (citations omitted).

We now turn to the facts before us. As stated above, the question with which we must begin any speedy trial analysis is whether the delay was of constitutional dimension. To answer that question, we must first determine the start and end dates in the case before us.

On July 7, 2015, Montgomery County Police officers, who had observed appellant engaging in what they believed was a drug transaction, obtained an arrest warrant, which they executed a week later, on July 14th. During appellant's arrest, the police found in his possession and seized, among other things, 13.9 grams of cocaine, 20 hydrocodone pills in a bottle without a label, a digital scale, and two cell phones. On that day, appellant was brought to district court and charged with possession with intent to distribute cocaine and

---

[2] This two-factor rule is identical to the rule applied when a *nol pros* occurs in a 180-day case. *See* Md. Rule 4-271(a) and *State v. Hicks*, 285 Md. 310 (1979). *See also Collins v. State*, 192 Md. App. 192, 210-11 (2010) (holding that the State acted in good faith when it *nol prossed* charges so that it could investigate leads that someone other than the accused committed the crimes because the necessary effect and purpose of the *nol pros* was not to circumvent the 180-day rule) and *Wheeler v. State*, 165 Md. App. 210, 220-33 (2005) (holding that the State acted in bad faith in *nol prossing* the charges when its DNA evidence would not be ready by the time of trial in 19 days because, although the purpose of the *nol pros* was not to evade the 180-day rule, the necessary effect of the *nol pros* was to circumvent it).

possession of hydrocodone, based on the items found in his possession at the time of his arrest. He was released on bail.

On August 14, 2015, the State *nol prossed* the charge of possession of cocaine with the intent to distribute, the felony charge. Less than six weeks later, on September 24, 2015, a grand jury indicted appellant for possession of cocaine with the intent to distribute and possession of hydrocodone. However, the State again *nol prossed* the charges on January 7, 2016, and re-charged appellant on March 17, 2016, adding a charge of possession of hydrocodone with the intent to distribute. On July 14, 2016, the court denied appellant's motion for dismissal based on speedy trial and due process violations.

Trial commenced on September 6, 2016. Prior to choosing the jurors, the State *nol prossed* the possession with intent to distribute hydrocodone charge. After both parties rested, the court granted appellant's motion for judgment of acquittal as to the possession of hydrocodone charge. Appellant was convicted of possession of cocaine with the intent to distribute. Following the circuit court's grant of his motion for a new trial on October 21, 2016, appellant was re-tried on December 19, 2016 and found guilty of possession of cocaine.

Appellant argues that the triggering date for speedy trial purposes occurred on July 7, 2015, when the first set of charges involving drug dealing were filed against him. Appellant is wrong.[3] At the earliest, the triggering date is July 14, 2015, when appellant

---

[3] It appears that appellant may have waived any argument that his constitutional or due process rights to a speedy trial were violated for the time between his arrest and when the trial court granted his motion for a new trial. Although we have not found a case with

(continued)

was served with the arrest warrant for the events underlying his first trial. The State responds that because it acted in good faith when it later *nol prossed* and re-charged those counts, the triggering date for speedy trial purposes occurred on March 17, 2016. We shall look at the time between July 14, 2015, and March 17, 2016, more closely to determine whether any of that delay counts in a speedy trial analysis.

We are persuaded that the time between July 14, 2015, when appellant was arrested on the underlying charges, and August 14, 2015, when the State *nol prossed* the possession with intent to distribute cocaine, does not count in our speedy trial analysis for the simple reason that appellant has failed to shoulder the burden of showing that the circuit court's finding that the State had acted in good faith was clearly erroneous. The State in its written

---

a similar fact, in closely related situations, when a mistrial is declared or when a case is reversed on appeal, it is the time between the grant of a mistrial (or mandate reversing the prior trial) and the commencement of the subsequent trial date that is counted in a speedy trial analysis. *See Hallowell v. State*, 235 Md. App. 484, 513-14 (2018). We have stated:

> [I]t is clear to us that the Maryland cases having similar factual situations, as well as the weight of authority elsewhere, support a holding, and we so hold, that, in construing a party's right to a speedy trial under the Sixth Amendment of the Federal Constitution and Article 21 of the Declaration of Rights of Maryland's Constitution, in a serial trial context, we are *generally*, absent extraordinary circumstances not present here, only concerned with the period between the receipt of an appellate mandate, if the next prior conviction is reversed, and the subsequent retrial, or the period between the declaration of a mistrial and the commencement of the retrial. In the case *sub judice*, we will, thus, only consider the period from the date of the mistrial of appellant's second trial and the commencement of his third trial.

*Icgoren v. State*, 103 Md. App. 407, 420, *cert. denied*, 339 Md. 167 (1995). Accordingly, it appears that the only viable period for consideration is between the lower court's grant of appellant's motion for a new trial and his second trial date. Neither party, however, has raised this issue so we shall not address it.

9

motion and during argument before the motions court accounted for why it had *nol prossed* the charges. The State explained that while appellant was on bail on the initial charges, the police continually uncovered new and ever more serious drug offenses committed by appellant. There is nothing in the record that suggests that the State did not act in good faith or that the delay of one month after his arrest was done purposefully to avoid a speedy trial claim. Moreover, appellant does not set forth any argument to the contrary under the *MacDonald* exception for this period. Therefore, under the circumstances presented, we are persuaded that the circuit court's factual findings, i.e., that there was no evidence of bad faith by the State in its decision-making process in *nol prossing* and re-charging the documents, were not clearly erroneous.

The time between August 14, 2015, when the State *nol prossed* the charges, and September 24, 2015, when the State re-indicted appellant, also does not count in a speedy trial analysis because no charges were pending against appellant. This period, however, is relevant in our due process analysis below.

We are also persuaded that the time between when the State re-indicted appellant on September 24, 2015, and when the State again *nol prossed* the charges on January 7, 2016, does not count in our speedy trial analysis. As stated above, the *MacDonald* exception provides that so long as the State acted in good faith, the *nol pros* terminates the original prosecution, and the speedy trial clock starts anew from the date of the filing of the new charging document. *See Henson*, 335 Md. at 336–38. Again, the State in its written motion and during argument before the motions court explained in detail why it *nol prossed* the charges. Specifically, on September 30, 2015, less than a week after being re-

10

indicted, appellant was stopped for a traffic violation in the same vehicle involved in the other pending charges. The car was searched and, after a K-9 scan indicated the presence of drugs, the police found, among other things, cocaine and a digital scale. Appellant was arrested and posted bond. The police continued to receive reports of appellant's drug dealing and discovered that a picture on one of the cell phones seized from appellant during an earlier search showed him with a handgun. That picture was forwarded to the county's firearm unit to determine whether the firearm was real and the specific type of firearm. That information was then forwarded to the federal ATF to determine if there was a possible firearm offense. In the meantime, on December 14, 2015, the police observed suspicious activity between appellant and another person, who was subsequently followed and stopped by the police, and who then informed the police that he had purchased cocaine from appellant. The police later obtained a warrant to search appellant's home in mid-January.

Given the two indictments, continuing multiple reports of appellant's ongoing drug dealing, and the impending execution of the search warrant, the State believed that appellant was engaged in the criminal enterprise of drug trafficking, and decided to terminate the two indictments so as to consolidate those cases and any anticipated charges resulting from the yet-to-be executed search warrant. The State argued that terminating the cases would allow the State more time to resolve the ongoing firearm investigation and upgrade the simple possession of hydrocodone on July 13 to possession with the intent to distribute. The State argued that from the ongoing criminal activity they saw a "common pattern or common scheme" that indicated that the State should proceed in a single trial

11

proceeding, to save time and resources. At the time of the motions hearing, the court noted that discovery comprised 13,000 pages.

Appellant does not argue that the circuit court's findings that the State had acted in good faith were clearly erroneous, but argues in the context of the second *Barker* inquiry, i.e., discerning the reasons for the delay, to whom the delay should be assigned, and how heavily it should weigh, that the delay was "not legitimate" because there was "no valid reason . . . for the State to believe that the charges stemming from entirely separate incidents on separate dates could be tried together." "Therefore the 'reasons for delay' factor should be weighed heavily against the State." Based on the record before the motions court and the clearly erroneous standard of review by which we review the lower court's ruling on questions of fact, we are persuaded that appellant again fails to shoulder his burden of showing that the circuit court's finding of an absence of bad faith was clearly erroneous. Accordingly, this time does not count toward the length of the delay.

The time between January 7, 2016, when the State *nol prossed* the charges, and March 17, 2016, when the State re-indicted appellant, is not part of a speedy trial analysis for the reason noted above -- no charges were pending against appellant. Again, this period is relevant in our due process analysis below.

In sum, we agree with the State that based on the lower court's findings that the State had acted in good faith in *nol prossing* and re-indicting, the triggering date for speedy trial analysis is March 17, 2016.

Appellant argues that the end date for purposes of a speedy trial analysis is when his first trial began on September 6, 2016. The State argues that the ending date is July 14,

12

2016, when the circuit court ruled on appellant's motion to dismiss for a violation of his speedy trial rights. To support its argument, the State cites *Nottingham v. State*, 227 Md. App. 592, 615 (2016), where we held that the ending date is when the trial court rules on a motion to dismiss for lack of a speedy trial, not the trial date.

*Nottingham* appears to be novel in this respect for we have found no other case that used as the end date, the date the motion court denied a motion to dismiss for a lack of speedy trial. Our case law search reveals that it is generally the date of trial, not the date of the lower court's ruling on a motion to dismiss, that counts as the end date for speedy trial purposes, except, where the lower court *grants* the motion to dismiss and no trial occurs. *See Marion*, 404 U.S. at 320-21 (stating that it is the trial date that serves as the end date for speedy trial purposes); *In re Thomas J.*, 372 Md. at 73 (same); *Divver*, 356 Md. at 388-89 (same); *State v. Gee*, 298 Md. 565, 579, *cert. denied*, 467 U.S. 1244 (1984) (same). *See also Glover v. State*, 368 Md. 211, 218-19 (2002) (end date for speedy trial purposes is when the motion to dismiss was granted). Nevertheless, whether the end date is calculated from the date of the circuit court's denial of appellant's motion to dismiss on July 14, 2016 (a span of less than four months) or appellants' first trial date on September 6, 2016 (a span of less than six months), neither span amounts to a delay of constitutional dimension for a case involving felony drug charges. *See State v. Gee*, 298 Md. at 578 (stating that the Court was "not aware of an opinion of the Supreme Court of the United States or of the appellate courts of this State which holds that a delay of six months is of constitutional dimension") (footnote omitted). *See also Tapscott v. State*, 106 Md. App. 109, 125 (1995) (a delay of more than seven months is not of constitutional dimension),

13

*aff'd*, 343 Md. 650 (1996); *Sylvester* v. State, 16 Md. App. 638, 645 (a delay of seven months was not of constitutional dimension), *cert. denied*, 268 U.S. 747 (1973). *Cf. Divver*, 286 Md. at 390 (holding that a delay of over a year in a "run-of-the-mill" district court case of driving while under the influence of alcohol was of constitutional dimension). For the reasons stated above, appellant's right to a speedy trial was not denied.

## B. Fourteenth Amendment due process violation?

The Due Process Clause of the Fourteenth Amendment states: "nor shall any State deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend XIV. As we stated above, any undue delay after the Government, acting in good faith dismisses charges, must be scrutinized under the Due Process Clause, not the Speedy Trial Clause. *McDonald*, 456 U.S. at 7.

To show a Due Process violation: "[A] defendant must show that the pre-indictment delay caused him actual, substantial prejudice and that the delay was the product of a deliberate act by the government designed to gain a tactical advantage." *Clark v. State*, 364 Md. 611, 631 (2001) (citing *Marion*, 404 U.S. 307 and *United States v. Lovasco*, 431 U.S. 783 (1977)). Actual prejudice caused by the passage of time means the "impair[ment of] memories, cause evidence to be lost, deprive the defendant of witnesses, and otherwise [impair] his ability to defend himself." *Id*. at 625-26 (quotation marks and citation omitted). In *Smallwood v. State*, 51 Md. App. 463, 465-66 (1982), we offered many examples that militate against a finding of an intent to impair the accused's defense when evaluating proffered good-faith and well-reasoned bases for pre-indictment delay. For instance, waiting to consolidate multiple cases into one joint trial and allowing evidence to

14

adequately develop are good reasons for a pre-indictment delay. *Id.* A defendant has the burden of establishing both prongs of the test. *Id.* at 472.

A total of roughly four months are relevant in appellant's due process claims – the time between August 14, 2015 (when the State first *nol prossed* the charges) and September 24, 2015 (when the State re-indicted appellant), and the time between January 7, 2016 (when the State *nol prossed* the charges a second time), and March 17, 2016 (when the State re-indicted appellant a second time). We can quickly dispose of appellant's due process claim because appellant has failed to show that the delay caused any actual prejudice, or that the State acted deliberately in securing the delay to gain a tactical advantage.

At the hearing on appellant's right to a speedy trial and due process, appellant's attorney in fact acknowledged that appellant had sustained no actual prejudice. While the circuit court did not make a specific ruling on this prong, given the statement by the defense, that no evidence was presented to the contrary, and the trial court's ultimate conclusion that no violation occurred, we conclude that the motions court found no actual prejudice. *See Nottingham*, 227 Md. App. at 615 (recognizing that "absent a misstatement of law or conduct inconsistent with the law, a trial judge is presumed to know the law and apply it properly") (citing *Morris v. State*, 153 Md. App. 480, 489–90 (2003) (observing that, where motions court merely announces its ruling, "without announcing any findings of fact," appellate court "will resolve ambiguities and draw inferences in favor of the prevailing party and against the losing party")). Moreover, the circuit court found that there was no evidence of "prosecutorial misbehavior," and appellant has not persuaded us

15

that the circuit court's factual findings in this regard were clearly erroneous. In sum, we find no error by the circuit court in denying appellant's motion to dismiss.

## II.

Appellant's second trial concerned drug-related crimes that occurred on January 11, 2016, and a jury ultimately convicted appellant of possession of clonazepam, possession of alprazolam, and two counts of possession of oxycodone.

Appellant argues on appeal that the circuit court lacked subject matter jurisdiction to convict him of possession of clonazepam and two counts of possession of oxycodone because he was never charged with simple possession of those drugs, only with possession with the intent to distribute those drugs.[4] He recognizes that a criminal charge confers subject matter jurisdiction in the circuit court for lesser included charges under a *Blockburger*[5] analysis. *See Johnson v. State*, 427 Md. 356, 376 n.12 (2012) (citing *Hagans v. State*, 316 Md. 429, 447-50 (1989) for the proposition that a defendant may be convicted of an uncharged lesser included offense but only if it meets the *Blockburger* test). Appellant argues, however, that simple possession of a medically prescribed drug is not a

---

[4] Appellant does not include his conviction for possession of alprazolam in this argument because he was charged with (and the State eventually *nol prossed*) the charge of possession with the intent to distribute that drug.

[5] *See Blockburger v. United States*, 284 U.S. 299, 344 (1932). The *Blockburger* or "required evidence test" focuses on the elements of each offense and provides that if all the elements of one offense are included in the other offense so that only the latter contains a distinct element(s), the former is a lesser included offense of the latter. *See Purnell v. State*, 375 Md. 678, 693-94 (2003).

lesser included offense of possession with the intent to distribute that drug because simple possession of a prescribed drug requires proof of an element that possession with the intent to distribute that drug does not, the absence of a valid prescription. The State responds that what appellant characterizes as an "element" is actually an "affirmative defense" to be used by an accused, and therefore, possession of a medically prescribed drug is a lesser included offense of possession of that drug with the intent to distribute. It is a question of first impression for us.

Although appellant only raised this argument after his trial, the argument is properly before us because questions of jurisdiction may be raised at any time. *See* Md. Rule 4-252(d) ("A motion asserting failure of the charging document to show jurisdiction in the court or to charge an offense may be raised and determined at any time.").

The rules of statutory construction are long- and well-settled in Maryland:

> The cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of the Legislature. A court's primary goal in interpreting statutory language is to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by the statutory provision under scrutiny.
>
> To ascertain the intent of the General Assembly, we begin with the normal, plain meaning of the statute. If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to the legislative intent ends ordinarily and we apply the statute as written without resort to other rules of construction. We neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, and we do not construe a statute with "forced or subtle interpretations" that limit or extend its application.
>
> We, however, do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone. Rather, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or

17

policy of the Legislature in enacting the statute. We presume that the Legislature intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope.

Where the words of a statute are ambiguous and subject to more than one reasonable interpretation, or where the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as part of a larger statutory scheme, a court must resolve the ambiguity by searching for legislative intent in other indicia, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process. In resolving ambiguities, a court considers the structure of the statute, how it relates to other laws, its general purpose and relative rationality and legal effect of various competing constructions.

In every case, the statute must be given a reasonable interpretation, not one that is absurd, illogical or incompatible with common sense.

*State v. Bey*, 452 Md. 255, 265–66 (2017) (quotation marks and citations omitted).

Md. Code Ann., Crim. Law ("CL"), § 5-602(2), criminalizes possession with intent to distribute a controlled and dangerous substance and provides: "Except as otherwise provided in this title, a person may not . . . possess a controlled dangerous substance in sufficient quantity reasonably to indicate under all circumstances an intent to distribute or dispense a controlled dangerous substance." CL § 5-601(a)(1), criminalizes simple possession of a controlled and dangerous substance and provides: "Except as otherwise provided in this title, a person may not . . . possess . . . a controlled dangerous substance, *unless obtained directly or by prescription or order from an authorized provider acting in the course of professional practice*[.]" (emphasis added).

Appellant argues that the "unless" clause of § 5-601(a), requires the government to prove the lack of a valid prescription and is an element of the crime that is not found in

possession with intent to distribute that drug. According to appellant, a defendant can be guilty of possession with intent to distribute a prescription drug and not guilty of possession of that drug, if the defendant has a prescription for the drug. We disagree with appellant's reasoning.

Appellant fails to discuss the impact of another section in Maryland's drug laws that makes clear that the "unless" language creates an exception, not an element the State must prove in simple possession of a prescribed drug case. CL § 5-807(a), governs the State's burden of proof and provides: "The State need not negate an exemption, proviso, or exception set forth in this title in . . . a complaint, information, indictment, or . . . a trial[.]" § 5-807(a)(1). That section further states: "The burden of proof to establish an exemption, proviso, or exception is on the person claiming its benefit." § 5-807(a)(2). Moreover, CL § 5-807(b), concerning the presumption for a registrant or holder of a prescription order, provides:

> (b)(1) In the absence of proof that a person is a registrant or holder of an order form issued under § 5-303(d) of this title, the person is presumed not to be a registrant or holder of a form.

> (2) The person has the burden of proof to rebut the presumption.

§ 5-807(b).

Viewing the statutory scheme as a whole, the above language clearly frees the State from having to prove the absence of a prescription to secure a conviction for simple possession of a prescribed drug. Therefore, we hold that the "unless" language in § 5-601(a)(1) creates an exception, not an element of the crime of simple possession of a controlled dangerous substance. Thus, possession of a prescribed drug without a

19

prescription is a lesser included offense of possession of the prescribed drug with an intent to distribute. *Cf. United States v. Miller*, 527 F.3d 54, 72 (3d Cir. 2008) (stating that "affirmative defenses are not among the elements to be considered in comparing" offense under *Blockburger*).

Were we to adopt appellant's reasoning, the State would have to negate the possibility of a valid prescription in every possession of a prescription drug case, a near impossible task. Such an interpretation would be "absurd, illogical [and] incompatible" with the statutory scheme to criminalize illegal possession of drugs. Our holding is also in accord with other jurisdictions who have faced this issue in the context of the federal Controlled Substance Act, *see* 21 U.S.C. title 21, chapter 13, subchapter I, §§ 801 *et. seq.,* which contains nearly identical language to our Maryland drug laws.[6] Those jurisdictions have reached the same conclusion that we have, i.e., that the "unless" clause establishes a defense for an accused to raise, not an element of the offense of the government to prove. *See United States v. Matthews*, 749 F.3d 99, 104 (1st Cir. 2014); *United States v. Foster*, 374 Fed.Appx. 448, 449 (4th Cir.), *cert. denied*, 562 U.S. 928 (2010); *United States v.*

---

[6] *See* 21 U.S.C.A. § 841(a), criminalizing possession with the intent to distribute a controlled substance. *See* 21 U.S.C.A. § 844(a), criminalizing simple possession of a controlled substance and provides: "It shall be unlawful for any person knowingly or intentionally to possess a controlled substance *unless* such substance was obtained directly, or pursuant to a valid prescription or order, from a practitioner, while acting in the course of his professional practice[.]" (emphasis added). *See* 21 U.S.C.A. § 885(a)(1), concerning exemptions and exceptions and provides: "It shall not be necessary for the United States to negative any exemption or exception set forth in this subchapter in any complaint, information, indictment, or other pleading or in any trial . . . and the burden of going forward with the evidence with respect to any such exemption or exception shall be upon the person claiming its benefit."

20

*Forbes*, 515 F.2d 676, 680 n.9 (D.C. Cir. 1975). *See also Woods v. Butler*, 847 F.2d 1163, 1166-67 (5th Cir.) (relying on *Forbes* in analyzing Louisiana's drug statutes that are "virtually identical" to 21 U.S.C.A. §§ 844 (a) and 885(a)(1) and reaching the same results), *cert. denied*, 488 U.S. 970 (1988).

For the foregoing reasons, we shall affirm the judgments.

**JUDGMENTS AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**